IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MARCUS JONES,

    Plaintiff,

v.      Civ. No. 13-1765-LPS

WASTE MANAGEMENT, INC. OF DELAWARE,

    Defendant.

---

Marcus Jones, Middletown, Delaware, Pro Se Plaintiff.

Laurence V. Cronin, Esquire, Smith, Katzenstein & Jenkins, LLP, Wilmington, Delaware and Barbara Rittinger Rigo and Holly Rich, Esquires, Littler Mendelson, P.C., Philadelphia, Pennsylvania. Counsel for Defendant.

## MEMORANDUM OPINION

March 18, 2015
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Marcus Jones ("Jones" or "Plaintiff") filed this action on October 28, 2013, against Defendant Waste Management, Inc. of Delaware ("Waste Management" or "Defendant") pursuant to Title VII of the Civil Rights act of 1964, as amended, alleging employment discrimination by reason of race and retaliation.[1] (D.I. 1, 4) Initially, Jones was represented by counsel, but he now proceeds *pro se*. Presently before the Court is Defendant's Motion for Summary Judgment. (D.I. 33) Jones did not file an opposition to the motion. For the reasons that follow, the Court will grant the motion.

## II. BACKGROUND

Jones began his employment with Waste Management[2] at its Wilmington, Delaware facility as a residential driver in May 2007. (D.I. 36 Ex. L at APP119-121, 126) A few months later, he became a swing driver and held that position until his employment was terminated effective March 1, 2012. (*Id.* at APP122) Swing drivers serve as backup drivers for routes that need coverage; either commercial, residential, or roll-off.[3] (*Id.* at APP121, 129) Jones mostly covered residential and roll-off routes. (*Id.* at APP163) Jones' supervisors included residential managers Tim Richards ("Richards") and Andrew Short ("Short") and roll-off manager Douglas Sorantino ("Sorantino"). (*Id.* at APP124-26, 207) Richards is African American and Short and Sorantino are Caucasian. (*Id.* at Exs. H; L at APP227, 262; M at APP276)

---

[1] The original complaint named the defendant as Waste Management, Inc.

[2] Waste Management provides waste disposal and recycling services to residential and commercial customers.

[3] Roll-off drivers move large containers of waste, typically from construction sites. (D.I. 36 Ex. L at APP162, 255)

1

During the Spring of 2010, Waste Management found it was unable to compete for major contracts because of its driver pay rates. (*Id.* at Ex. S at ¶ 3) Waste Management conducted a comparative analysis of its drivers' pay against that of its competitors, including the region where Jones worked – in Wilmington, Delaware – and discovered that it paid its drivers substantially more than its competitors. (*Id.* at ¶ 4) The pay differential detrimentally affected its business in many districts, including Wilmington. (*Id.* at ¶ 5) As a result of its analysis, Waste Management implemented a new hourly rate banding system that took into account a driver's years of experience, current rate, and market rate for the region. (*Id.* at ¶ 6) According to Liz Bieler ("Bieler"), a human resources generalist for Waste Management, an employee's race was not taken into account when making the pay rate determination. (*Id.* at ¶ 7)

All drivers were given advance notice of the new system and the new pay rates became effective in August 2010. (*Id.* at Exs. L at APP140-42, 147; S at ¶ 9) Jones testified that he worked with two other swing drivers, Wayne Gilley ("Gilley") and John Shields ("Shields"), both of whom he believes are Caucasian. (*Id.* at Ex. L at APP127-28) Jones, Gilley, and Shields were affected by the new system and all had their pay reduced by varying degrees, depending upon their years of service. (*Id.* at Ex. S at ¶¶ 10-12)

Waste Management has a confidential, toll-free, integrity helpline ("helpline") available to employees year-round, twenty-four hours per day, seven days a week. (*Id.* at Ex. L at APP165-66) Jones called the helpline on March 10, 2011 to complain that Richards, his supervisor, was looking for ways to terminate him after Richards discussed the attendance policy with Jones following Jones' violations of the attendance policy. (*Id.* at Exs. E; R at ¶ 4) Jones found it suspicious that Richards approached him about attendance issues only after Jones complained that he was not paid as much as his co-workers following the August 2010 wage adjustments. (*Id.* at Ex. E)

During the relevant time, Waste Management had a policy regarding preventable accidents that was published in the company's employee handbook. (*Id.* at Exs. B; L at APP134-37, 219-20) The policy provided that drivers were progressively disciplined for accidents deemed preventable as follows: (1) a first offense in any twelve-month period resulted in a written warning; (2) a second offense in any twelve-month period resulted in a three-day suspension and a final warning; and (3) a third offense in any twelve-month period resulted in termination. (*Id.* at Exs. B at ¶ 5; L at APP136-38; T at ¶ 4)

Jones was involved in three safety-related accidents during a twelve-month period: on April 20, 2011, October 24, 2011, and February 24, 2012. Each accident was investigated and it was determined by Waste Management that each accident was preventable. (*Id.* at Exs. F, G, I) Jones received a written warning for the first accident. (*Id.* at Exs. C, F, L at APP177-79) Jones signed the written warning indicating that he understood the discipline. (*Id.* at Ex. F)

Following the second accident, Jones was issued and served a three-day suspension. (*Id.* at Exs. G, L at APP196-97, 199-200) Jones called the helpline and complained that the suspension was unfair, but he does not recall if he complained of race discrimination or retaliation. (*Id.* at Ex. L at APP200, 201-03, 243) At this point, Jones suspected retaliation for complaining about his decrease in pay and requested a copy of his personnel file from various Waste Management personnel. (*Id.* at APP271) Human resources looked for Jones' file, but could only find Jones' application of employment. (*Id.*) During his deposition, Jones was shown various documents from his personnel file, all of which contained his signature. (*Id.* at APP271-72)

After the third accident on February 24, 2012, Jones was notified by Sorantino and Short on February 27, 2012 that he would be suspended pending investigation and that he might be terminated. (*Id.* at Exs. B, I, L at APP208-11, 216-17) On the same day he was suspended, Jones

3

called the helpline after he had spoken to Sorantino and complained that Sorantino and/or Short[4] had discriminated against him based upon his race, they did not treat everyone equally, and Caucasian employees who had similar accidents were not terminated. (*Id.* at Exs. H, U) Jones testified that he had never before complained about Sorantino, but felt that Sorantino was a bigot because he and Short are related through marriage. (*Id.* at Ex. L at APP225-26, 240-241) Jones had prior issues with Short, but he had never accused Short of racism. (*Id.* at APP242-43)

Jones testified that he did not know when the decision was made to terminate his employment. (*Id.* at Ex. L at APP236) Unbeknownst to Jones, Sorantino had made the decision to terminate Jones' employment prior to the time Jones called the helpline, as it had been determined that Jones had three preventable accidents in twelve months in violation of Waste Management policy. (*Id.* at Ex. U) Sorantino was never informed of Jones' February 27, 2012 helpline telephone call. (*Id.*)

A termination document, dated March 1, 2012, states that Jones was terminated pursuant to Waste Management policies, effective March 1, 2012, due to a third preventable accident within a twelve-month period. (*Id.* at Ex. I at APP066-67) Jones was informed of his termination by Sorantino and Short on March 2, 2012. (*Id.* at Ex. L at APP222-23, 235-36) Following his termination, Jones called the helpline and complained that the accident was not attributable to him, as there was a mechanical issue with the brakes. (*Id.* at Ex. H) Jones was advised on March 6, 2012 that Lumpkin would investigate his complaint. (*Id.*) Lumpkin called Jones on March 29, 2012 and asked him to provide a copy of the driver's incident report for the accident, but Jones refused. (*Id.*)

---

[4]The helpline notes refer to Sorantino, but the affidavit of human resources manager Shawn Lumpkin ("Lumpkin") states that Jones complained about Short. (*See id.* at Exs. H, U)

4

Jones did not cooperate with Lumpkin because he did not know who to trust. (*Id.* at Ex. L at APP239)

Jones filed a charge of discrimination on May 30, 2012, alleging race discrimination and retaliation in the form of suspension and discharge. (*Id.* at Ex. J) The charge of discrimination states that John Quick (presumably a reference to John Quirk) remained employed despite receiving three suspensions in one year for four different incidents. (*Id.*) The evidence of record indicates that John Quirk is identified as an American Indian and that during the time he was employed by Waste Management, he did not incur three preventable accidents within a rolling twelve-month period. (*Id.* at Ex. T)

The charge of discrimination also alleges Jones' termination was a result of retaliation after he telephoned the helpline on February 27, 2012 and was discharged within four days. (*Id.* at Exs. J, K) Jones testified that the February 27, 2012 helpline telephone call was the cause for the retaliation. (*Id.* at Ex. L at APP250-51) According to Waste Management, during agency proceedings, Jones also complained of his pay reduction and alleged that Waste Management denied him access to his personnel file. (D.I. 34 at ¶ III.K) Jones received a right-to-sue letter dated July 29, 2013 and filed this action on October 28, 2013.

### III. <u>LEGAL STANDARDS</u>

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). An assertion that a fact cannot be – or, alternatively, is – genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those

made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see also Podohnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" and a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the non-moving party's position is

insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

With respect to summary judgment in a discrimination case, the Court's role is "to determine whether, upon reviewing all the facts and inferences to be drawn therefrom in the light most favorable to the plaintiff, there exists sufficient evidence to create a genuine issue of material fact as to whether the employer intentionally discriminated against the plaintiff." *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir. 1987).

Jones did not file a response to Waste Management's motion. The Court, however, will not grant the entry of summary judgment without considering the merits of Defendant's unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that district court should not have granted summary judgment solely on the basis that motion for summary judgment was not opposed).

## IV. DISCUSSION

Jones alleges race discrimination and retaliation in violation of 42 U.S.C. § 2000e, *et seq.*

Waste Management moves for summary judgment on the grounds that: (1) Jones is unable to establish a prima facie case of discrimination; (2) Jones cannot point to any discriminatory inference with regard to his claim related to his personnel file; (3) Jones cannot rebut Waste Management's legitimate, non-discriminatory reasons for its employment decisions; (4) Jones' retaliation claims fails because he failed to adduce evidence to suggest a causal connection between his protected activity and employment termination; and (5) Jones cannot refute Waste Management's legitimate, non-retaliatory reasons for ending his employment.

7

### A. Title VII, Race Discrimination

The amended complaint alleges that Waste Management discriminated against Jones on the basis of his race when it: (1) disciplined Jones in a manner that was inconsistent with Waste Management's treatment of Caucasian employees involved in similar, if not more severe, incidents; (2) treated Jones differently from similarly situated employees of a different race by demoting Jones to a lower pay grade than the Caucasian swing drivers, with no explanation besides advising Jones that he was "making too much money;" and (3) failed to provide Jones with the full resources and cooperation of the human resources department, including denying Jones the opportunity to inspect his personnel file upon request pursuant to 19 Del. C. § 730 *et seq.* (D.I. 4, Count I)

Title VII states that "[i]t shall be an unlawful employment practice for an employer to . . . discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin" 42 U.S.C. § 2000e-2(a). A plaintiff may prove race discrimination by direct evidence as set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-46 (1989), or indirectly through the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Because there is no direct evidence of discrimination, the Court turns to the *McDonnell Douglas* burden-shifting framework. Under this framework, Jones must first establish a prima facie case of race discrimination by proving that: (1) he is a member of a protected class; (2) he suffered some form of adverse employment action; and (3) this action occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. *See Jones v. School Dist. of Philadelphia*, 198 F.3d

403, 410 (3d Cir. 1999). The elements of a prima facie case may vary depending on the facts and context of the particular situation. *See Pivirotto v. Innovative Sys. Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).

If a plaintiff succeeds in establishing his prima facie case, the burden shifts to the defendant employer to proffer a "legitimate non-discriminatory" reason for its actions. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). If the defendant meets this burden, the burden again shifts to the plaintiff to demonstrate, by a preponderance of the evidence, that the employer's rationale is pretextual. *Id.* at 142-43. To do this, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted). "[T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Harding v. Careerbuilder, LLC*, 168 F. App'x 535, 537 (3d Cir. Feb. 27, 2006) (quoting *Fuentes*, 32 F.3d at 764) (internal citations and other citations omitted).

Jones points to three instances of alleged race discrimination: (1) when his pay was decreased; (2) when, following the second accident that occurred on October 26, 2011, he requested his personnel file but he was given access only to his employment application; and (3) when Waste Management determined that his third accident was preventable, he was disciplined, and his employment terminated.

In two of these instances, Waste Management argues that Jones failed to establish a prima facie case of discrimination under Title VII. With regard to the pay decrease, Waste Management

9

argues that Jones failed to establish that the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. To make a comparison of Jones' treatment to that of an employee outside his protected class for purposes of a Title VII claim, he must show that he and the employees are similarly situated in all relevant respects. *See Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. Dec. 8, 2009) (citations omitted). Whether a factor is relevant for purposes of a similarly situated analysis must be determined by the context of each case. *See id.* at 654.

Jones is not required to show that he is identical to the comparator in each relevant factor, "but he must show substantial similarity." *Id.* (citation omitted). Accordingly, in order to establish an appropriate class of similarly situated comparators, Jones must identify employees who share characteristics that are relevant to the facts of this case. The evidence of record does not demonstrate that Jones was treated differently from Caucasians with regard to the pay cut, but instead that Waste Management implemented a district-wide pay reduction that affected the salaries of all Wilmington drivers. Similar to Jones, his two comparators, Gilley and Shields, both of whom are Caucasian, each received severe pay cuts.[5] In light of the foregoing, the Court finds that Watson has failed to meet his burden to establish a prima facie case of race discrimination.

With regard to the discipline that followed his third preventable accident, including his termination, Waste Management again argues that Jones failed to establish that the discipline occurred under circumstances giving rise to an inference of unlawful discrimination such as might occur when a similarly situated person not of the protected class is treated differently. In a

---

[5]Jones made several complaints following his reduction pay, but did not directly relate the pay reduction to race discrimination. However, he did testify that he told Short that he felt he was being discriminated against because of the pay reduction (without mentioning race) and he also speculated that Short did not like him because he is an African American. (D.I. 36 Ex. L at APP153, 54, 268-69)

10

severance case, the relevant factors may include the positions held, policies or plans in effect, the decisionmakers, and the timing of the separation. *See Houston*, 355 F. App'x at 655 (citing *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54-55 (2d Cir. 2001) (plaintiff established she was similarly situated to a colleague who received more money in severance where the two employees "held positions of roughly equivalent rank . . . were fired at roughly the same time, [and] the decisions with respect to the severance were both made at the highest levels of the company")).

In the instant case, Quirk, with whom Jones compares himself, is not similarly situated. Quirk (who is not Caucasian, but American Indian), did not have three preventable accidents within a year. In light of the foregoing, the Court finds that Watson has failed to meet his burden to establish a prima facie case of race discrimination.

With regard to the failure to provide Jones his complete personnel file for review, Waste Management argues that even if the act constitutes an adverse action, Jones cannot point to any discriminatory inference. The evidence of record demonstrates that during his deposition Jones was shown the documents from his personnel file, all of which he had signed, an indication that he had seen the documents. In addition, there is no evidence of record that the personnel file was not produced to Jones based upon his race. Finally, an adverse employment action is one "that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004). "Not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996). Here, the Court cannot say that a missing personnel file significantly changed Jones' employment status, particularly when all the items contained in the file were signed by Jones, indicating that at least at some point he had knowledge of the documents.

Assuming arguendo that Jones established a prima facie case of discrimination, Waste Management provided legitimate, nondiscriminatory reasons for the employment decisions it made. The evidence indicates that Jones' pay was decreased in accordance with corporate policy, and that he was suspended and terminated in accordance with company policy following his second and third preventable accidents. There is nothing before the Court that contradicts the proffered reason for the employment actions taken by Waste Management. Nor are Waste Management's proffered reasons for its actions weak, incoherent, implausible, or so inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Ser.*, 352 F.3d 789, 800 (3d Cir. 2003). Construing the record in the light most favorable to Jones, he has not provided evidence from which a fact finder could either disbelieve Waste Management's articulated reasons, or believe that a discriminatory reason was more likely than not the cause of the employment actions. Therefore, the Court will grant Defendant's Motion for Summary Judgment.

**B.     Retaliation**

The amended complaint alleges that Waste Management: (1) discriminated against Jones in retaliation for Jones' continued follow-up and protest regarding his decrease in pay grade compared to the other (Caucasian) swing drivers, as well as the three-day suspension he received; and (2) retaliated against Jones when it purposefully disciplined Jones in a manner that was inconsistent with Waste Management's treatment of similar situated Caucasian employees, which eventually resulted in Jones' termination. (D.I. 4, Count II) Waste Management moves for summary judgment on the grounds that Jones failed to establish a causal connection between his helpline call and his termination from employment.

The elements of retaliation claim are that: (1) plaintiff engaged in protected activity; (2) the employer took a materially adverse action against him; and (3) there was a causal connection

12

between the protected activity and the employer's action. *See LeBoon v. Lancaster Jewish Comty. Ctr. Ass'n*, 503 F.3d 217, 231 (3d Cir. 2007). A materially adverse employment action is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation and internal quotation omitted). Whether an action is materially adverse "often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id.*

With respect to the causation prong, the Court considers whether a reasonable jury could link the employer's conduct to retaliatory animus. *See Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) ("[T]he ultimate question in any retaliation case is an intent to retaliate . . . .") (citation omitted). In assessing this, the Court considers the "temporal proximity" between the plaintiff's protected activity and the employer's allegedly retaliatory response, and "the existence of a pattern of antagonism in the intervening period." *Id.* at 450 (quotations and citations omitted). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four month period insufficient)).

Jones testified that his March 1, 2012 termination by Sorantino was in retaliation for his February 27, 2012 telephone call to the helpline, but conceded that he did not know when the decision was made to terminate him. The evidence of record is that Sorantino made the decision to terminate Jones prior to the time Jones made the February 27, 2012 helpline call. In addition, the

13

evidence of record is that Sorantino had no knowledge that Jones had called the helpline. Accordingly, Jones has failed to adduce evidence from which a reasonable factfinder could find a causal connection between his protected activity and the adverse employment action taken against him.

Even assuming arguendo that Jones had established a prima facie case of retaliation, Waste Management has proffered legitimate, non-retaliatory reasons for the actions it took. Jones was involved in three preventable accidents within a one-year time-frame, each accident was investigated, and pursuant to company policy Jones was disciplined following each accident, culminating in his discharge from employment following the third preventable accident. Defendant's proffered reasons for the actions it took are not so weak, incoherent, implausible, or inconsistent that a reasonable factfinder could rationally find them unworthy of credence. *See Sarullo v. United States Postal Service*, 352 F.3d 789, 800 (3d Cir. 2003).

The Court finds that no reasonable jury could find for Jones on the retaliation issue, and, therefore, will grant Defendant's motion for summary judgment on the retaliation issue

## V.  CONCLUSION

For the above reasons, the Court will grant Defendant's Motion for Summary Judgment (D.I. 33).

An appropriate Order follows.